ST. LOUIS UNION TRUST CO. et al. v. HARBAUGH et al. (No. 1329.)

(Court of Civil Appeals of Texas. Amarillo. April 10, 1918. Rehearing Denied May 15, 1918.)

1. APPEAL AND ERROR ⊕⟲742(4) — ASSIGNMENT OF ERROR—SUFFICIENCY.

A counter proposition attacking the finding of the jury on the issue of limitations, which attacked the sufficiency of the evidence to establish a trust in plaintiffs' favor, was not a sufficient assignment to require a consideration of the sufficiency of the evidence.

2. TRUSTS ⊕⟲44(2)—EXPRESS AGREEMENTS— EVIDENCE.

In an action of trespass to try title, wherein all the parties claimed under the will of the same testator, and that the testator's son had had the legal title subject to a trust in plaintiffs' favor, evidence *held* to sustain a finding that a partition was made upon agreement that it should be included in the deed to testator's son, who, upon further information, would divide the land between himself and plaintiffs.

3. TRUSTS ⊕⟲271 — EXECUTION OF TRUST— RIGHT OF TRUSTEES.

In such case the trustees under the will had no right to divest themselves of the duty of partitioning the property in settlement of the will, and to confer upon testator's son the power to subsequently handle the property for the beneficiaries.

4. TRUSTS ⊕⟲137 — VALIDITY—ESTOPPEL TO QUESTION.

In such case the son could not, by reason of such wrong, acquire the property free from the equitable title of plaintiffs, as he would be estopped from setting up the invalidity of a contract in which he had himself participated, and to which the beneficiaries of the trust were not parties.

5. TRUSTS ⊕⟲138—TITLE ADVERSE TO BENEFICIARY.

Under no circumstances can a trustee claim or set up a claim to the trust property adverse to the cestui que trust or deny the title of the cestui que trust, as a trustee must assume the validity of a trust under which he acts.

6. TRUSTS ⊕⟲356(1)—CONVEYANCE BY TRUSTEE—RIGHTS OF BENEFICIARIES.

Plaintiffs having an equitable interest in land under a will, if the trustee sought to convey it free from such interest in violation of the terms of the will, could follow it into the hands of any outsider, not an innocent purchaser for value, and could also follow it into the hands of one of the trustees.

7. TRUSTS ⊕⟲96—PAROL TRUST — CONSTRUCTIVE TRUST.

Even if a trustee could question the validity of the alleged oral trust on which the land

⊕⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

was conveyed to him, equity would enforce a constructive trust against him for the protection of the wronged beneficiaries.

**8. LIMITATION OF ACTIONS ⊜⟂103(2)—TRUST —LIMITATION AS AGAINST BENEFICIARY.**

Where property was taken and held in recognition of a trust,· the limitations did not begin to run against the beneficiaries until a repudiation of the trust by the trustee.

**9. LIMITATION OF ACTIONS ⊜⟂199(1)—QUESTION FOR JURY—REPUDIATION OF TRUST—ADVERSE POSSESSION.**

In an action of trespass to try title, wherein all the parties claimed under the will of the same testator, and that the testator's son had legal title subject to a trust in plaintiffs' favor, *held* that it was a question for the jury whether there was such a repudiation of the trust and notice thereof to the beneficiaries as made the alleged trustee's possession, after 1902, adverse.

**10. TRUSTS ⊜⟂138—ADVERSE POSSESSION BY TRUSTEE.**

To constitute the possession of a trustee adverse to the beneficiaries, the repudiation of the trust must be clear and unequivocal, and the beneficiaries must have notice thereof.

**11. ADVERSE POSSESSION ⊜⟂70 — TITLE TO SUPPORT CLAIM.**

The title acquired by an alleged trustee as to two-thirds of the land to which he had a legal title, the beneficial interest in which belonged to plaintiffs, was not such title as would support the three-year period of limitations as to such interest.

**12. EVIDENCE ⊜⟂347, 355(1), 357—DOCUMENTARY EVIDENCE—JUDICIAL RECORDS—PRIVATE MEMORANDA—LETTERS.**

In an action of trespass to try title, wherein all the parties claimed under the will of the same testator, and that the testator's son had had the legal title, subject to a trust in plaintiffs' favor, certified copies of a decree in chancery proceedings in another state, in which another was appointed trustee of the two trusts, a memoranda statement in the books of one who had assisted in the partition of the estate under will showing an allotment of the interests, letters of the agents while it was being handled by the substituted trustee, and a deed from such trustee conveying the trust property handled by him, were admissible to corroborate the positive testimony of a witness as to the agreement under which the property was conveyed to the testator's son in trust. ·

**13. APPEAL AND ERROR ⊜⟂1050(1) — HARMLESS ERROR—CONCLUSION OF WITNESS.**

In such action testimony of a witness that, in a proceeding resulting in the entry of certain decrees, the lands were treated as belonging one-third to the son and one-third to each of the alleged beneficiaries, though in the nature of a conclusion of fact, was not harmful error, where the facts leading to the conclusion were detailed by the witness.

**14. WITNESSES ⊜⟂149(2)—COMPETENCY—DECLARATIONS OF DECEDENTS—"LEGAL REPRESENTATIVES."**

In an action against a testamentary trustee by alleged beneficiaries, who claimed that testator merely held a legal title to the property involved in trust for plaintiffs, in which action testator's devisees intervened as defendants, none of the parties were "legal representatives," within Rev. St. 1911, art. 3690, as to testimony of transactions with decedent against the legal representatives, though the trustee was also made executor, the will not having been probated in Texas, and therefore testimony of a plaintiff as to a conversation with testator,

in which he admitted he held the land in trust, was competent.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Legal Representative.]

**15. TRIAL ⊜⟂251(2) — INSTRUCTIONS—APPLICABILITY TO ISSUES.**

In an action of trespass to try title, wherein all the parties claimed under the will of the same testator, and that the testator's son had had the legal title subject to a trust in plaintiffs' favor, affecting an undivided two-thirds interest growing out of the settlement of such will, the refusal to give special instructions was not error, where they were not appropriate in connection with the issues, and would have tended only to confusion in the consideration of those issues.

Appeal from District Court, Young County; Wm. N. Bonner, Judge.

Trespass to try title by Mary O. Harbaugh and others against the St. Louis Union Trust Company and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Frank A. Thompson, of St. Louis, Mo., J. E. Gilbert, of Dallas, and Kay & Akin, of Wichita Falls, for appellants. Coke & Coke, of Dallas, C. W. Johnson, of Graham, and W. D. Isenberg, of Los Angeles, Cal., for appellees.

BOYCE, J. The appellees, in an action of trespass to try title, recovered of appellants a two-thirds interest, theretofore undivided, in 10 surveys of land located in several different counties in this state. All the parties claim under the will of John B. Ghio. The appellants have the legal title to the entire interest, but the appellees claim that it is subject to a trust affecting an undivided two-thirds interest growing out of the settlement of the will of the said John B. Ghio. In addition to denying the trust, appellants claim to have acquired the entire interest under the 3, 5, and 10 year periods of limitation.

John B. Ghio, being the owner of the land in controversy and a large estate, situated in Missouri mostly, died in 1885, leaving a will. He left three children, or their descendants, for whom he sought to provide in the will: First, a son, James C. Ghio, who is now deceased, being the husband and father of the individual appellants who claim the land as beneficiaries under his will, of which the appellant the St. Louis Union Trust Company is trustee; second, Mary (wife of Francis X. Barada, now deceased), whose children are Andrew S. and John G. Barada, also Mary E. Barada, who is now also deceased, and whose sole devisee is W. Pratt Layton; third, Mary O. Cummiskey (now Harbaugh), a granddaughter.

By the terms of his said will the said John B. Ghio devised all of his property except certain parts set apart to his wife, and with which we are not concerned, to his son, James C. Ghio, his wife, Elizabeth M. Ghio, and his friend, William Booth, in trust, directing them as soon as the estate was set-

tled in the probate court to partition the property, with the assistance of three other named persons, in three equal parts, and convey by deed, joined in by said assistant partitioners, one of said portions to the said James C. Ghio, in fee simple, clear and free of the trust. Said will further directed that one portion of said property so partitioned was to be designated by deed duly signed by the said trustees, joined by the said assistant partitioners, as being held by the said trustee in trust for the use and benefit of the said Mary Barada, and the income of said trust was to be paid to the said Mary Barada during her life, and after her death to the guardian of her children, and as they should attain their majority each child should be entitled to have delivered his portion of said trust estate. This trust will be referred to as the Barada trust. The third portion of said trust estate was also to be designated by deed similarly executed, and to be held by said trustees in trust for the use and benefit of the granddaughter Mary O. Cummiskey, who was to receive the benefit of the income until she should be 25 years of age, when the trust should cease and said property turned over to her. This trust will be referred to as the Cummiskey trust. The appellees are the claimants of the property under the said Cummiskey and Barada trust provisions of the will.

The partition was effected in 1887 by the three trustees named, aided by assistants designated in accordance with the provisions of the will, and certain property by deeds, such as were provided for in the will, set aside to the Barada and Cummiskey trusts, respectively, and certain property conveyed in fee to the said James C. Ghio. The 10 surveys of land in controversy were included in the said conveyance to James C. Ghio, the conveyance reciting that the property was conveyed free of the trust, in accordance with the provisions of the will; but appellees claim that, on account of the lack of information on which to make an intelligent partition of these lands, it was decided by the trustees and assistant partitioners, at the time of the partition of said land and execution of said conveyances, that an equal partition should be made of all of the other property, and that said Texas lands should be conveyed to James C. Ghio, who was to hold this property in his name, one-third of it in his absolute right, and convey one-third of it to his sister, Mary L. Barada, and one-third to his niece Mary O. Cummiskey, or it was to be held in trust by him and disposed of as they should direct. We will make such further statement as is necessary in connection with the assignments as we discuss them.

Two general issues of fact were submitted to the jury: (1) "Was the partition of the Texas land by the commissioners under John B. Ghio's will made upon the agreement that said Texas lands should be included in the deed to James C. Ghio, so they would be clear of any trust created by John B. Ghio's will, so that, when further information was had than was then in possession of the commissioners, he (James C. Ghio) could then divide said land between himself and the Cummiskey and Barada trusts, one-third each, or to the beneficiaries direct?" (2) Whether said James C. Ghio had been in adverse possession of said property for 5 or 10 years, the issues being submitted separately, prior to the filing of the suit. These issues were answered against the appellants.

[1, 2] On oral argument, the finding of the jury on the first issue was vigorously assailed. We find no assignment briefed raising this question, though appellants do, under a counter proposition attacking the finding of the verdict on the issue of limitations, attack the sufficiency of the evidence to establish the trust. This would not be a sufficient assignment to require a consideration of this question. However, we believe the finding is amply supported by the evidence. The positive testimony of the agreement at the time of the partition and execution of the deed given by one of the partitioners was corroborated to some extent by the evidence of another one of the partitioners and also by these additional facts: From the year 1888 to 1893 the property was handled by the trustees of the Barada and Cummiskey trusts as belonging, one-third to James C. Ghio, and the other two-thirds to the trusts. In 1893, in two proceedings instituted in the chancery court in St. Louis by William Booth, one of the trustees, to secure his release, and the appointment of a successor in said two trusts, to which proceedings James C. Ghio and all parties at interest were parties, an agreed decree was entered in each case, discharging the said three original trustees, and appointing Francis X. Barada as sole trustee thereafter. Said decrees set forth the property subject to the trust, and in each instance described a one-third interest in the said lands in Texas as being a part of the trust estate involved in the particular proceeding. The decree directed said former trustees to deliver said property to the new trustee thus appointed, and provided for the execution of receipts, in quadruple by the new trustee, for the personal property delivered, and provided that one of such receipts should be delivered to each of the trustees and one receipt filed in said cause. The receipt filed was introduced in evidence. It was executed by the old trustees, including James C. Ghio, and the new trustee, Francis X. Barada, and recited that the said retiring trustees had delivered to the said Francis X. Barada, successor in said trust, "all and singular the real estate described in said judgment and decree." The testimony also tended to show that the consent decrees referred to were submitted to and approved by James C. Ghio. After this appointment

of the new trustee, and until about the year 1902, the property was handled by the Barada-Ghio Real Estate Company, a corporation, of which James C. Ghio was director and vice president, the taxes paid, and rents collected as belonging one-third to the said Ghio and one-third to each of the said trusts; and statements of such transactions were regularly made and delivered to the said James C. Ghio. Several of the beneficiaries of the two trusts, to wit, W. Pratte Layton and Andrew S. and John G. Barada, testified as to conversations with James C. Ghio during his lifetime, in which he admitted the existence of the trusts. There was some evidence tending to contradict some of the evidence we have stated, but these contradictions were for the jury to determine, and we think the evidence referred to is clearly sufficient to support the findings of the jury. McBride v. Briggs, 199 S. W. 342, and Ellerd v. Ellison, 165 S. W. 876, and authorities cited in those cases.

[3-8] Appellants, by the first and seventh assignments of error, contend that . the trustees under the will were without power to create the parol trust in James C. Ghio, since it would thereby defeat the provisions of the will, and consequently said attempted parol trust must fail, and appellants, holding under the will of James C. Ghio, would take the land absolutely free from the claims of the beneficiaries of the Barada and Cummiskey trusts. It is true, we think, that the trustees under the will had not the right to divest themselves, and the assistants to be designated to assist in the partition, of the duty of partitioning said property, and to confer upon James C. Ghio said power and the power of subsequently handling said property for the beneficiaries. So that there was at least a technical violation of the trust duties under the will. It does not follow, however, that James C. Ghio could, by reason of this wrong, acquire the property freed from the equitable title of the appellees. In the first place, he would be estopped from setting up the invalidity of a contract in which he himself participated, and to which the beneficiaries of the trust were not parties. He might possibly, while the original trust was being administered, have insisted that the property be delivered to the trustees for administration under the provisions of the will, rather than delivered direct to the beneficiaries; but since these trusts have expired, and the beneficiaries are now entitled to receive the trust property absolutely, this possible right is not now material. The said James C. Ghio and those claiming under him are in no position to set up one wrong against the beneficiaries of the trust as a justification for the perpetration of still further wrong to defeat them of their ultimate right to the property.

"Under no circumstances can a trustee claim or set up a claim to the trust property adverse to the cestui que trust, nor can he deny his title. * * * A trustee must assume the validity of the trust under which he acts." Perry on Trusts, § 433; Neyland v. Bendy, 69 Tex. 712, 7 S. W. 497. In the footnote to the above quotation it is stated that "a trustee who has accepted and entered upon the administration of the trust cannot allege the invalidity of his appointment as a reason for not accounting for the trust property." Citing Harbin v. Bell, 54 Ala. 389; Saunders v. Richard, 35 Fla. 28, 16 South. 679. The appellees had an equitable interest in the land under the will of John B. Ghio, and if the trustees thereof, James C. Ghio, Elizabeth M. Ghio, and William Booth, had sought to convey such property absolutely free from such interest, in violation of the terms of the will, the appellees could follow such property into the hands of any outsider even, so long as such person was not an innocent purchaser for value. Oliver v. Piatt, 3 How. 401, 11 L. Ed. 653; Schneider v. Sellers, 98 Tex. 380, 84 S. W. 421. Certainly then they could follow it into the hands of one of the trustees themselves acquiring it in violation of the terms of the trust, so that, even if the trustee could question the validity of the alleged parol trust under which the land was conveyed to him, equity would enforce a constructive trust against him in the protection of the wronged beneficiaries. Pomeroy's Equity Jurisprudence (3d Ed.) §§ 1052, 1053. So in no event do we think it could be said that James C. Ghio acquired the property free from the beneficial interest of the appellees. If he had acquired the property in absolute and acknowledged hostility to the trust, it may be that such acquisition would be itself a repudiation of the trust, and limitation might begin to run against the beneficiaries as they attained their majority. But as the property was taken and held in recognition of the trust, limitations would evidently not begin to run against the beneficiaries until a repudiation of the trust by the trustee.

[9, 10] Appellants further contend that, if any trust was ever charged against said lands in the hands of the said James C. Ghio, he repudiated it as far back as the year 1902, and has since said time been in adverse possession of said lands, and appellants were entitled to judgment under the 5 and 10 year periods of limitations. In order to dispose of these assignments which question the sufficiency of the evidence to support the answer of the jury to the issues of adverse possession submitted, it will be necessary to make some further statement of the facts. The beneficiaries of the Barada trust, Andrew S. and John G. Barada, and Mary E. Layton, who died after the filing of the present suit, and whose husband and sole devisee was W. Pratte Layton, and the beneficiary of the Cummiskey trust, Mary O. Harbaugh, at various times from 1899 to 1902 became entitled to have delivered to them their respective shares of the trust

property. During this period complications arose and litigation ensued. The St. Louis Union Trust Company, surety on the bond of Francis X. Barada, trustee, took charge of the trust property and of the Barada-Ghio Real Estate Company, of which the trustee, Francis X. Barada, up to that time had been the president and managing influence. During this time the beneficiaries of the trust learned that the title to the Texas property was in the name of James C. Ghio, and he was requested to convey to them their respective interests in said lands, and deeds were prepared and presented to him for execution. He did not execute these deeds, some of the witnesses stating that he declined absolutely, asserting that at this time he owned the entire interest in the property. The beneficiaries of the trust, however, denied ever having any knowledge of any claim on the part of James C. Ghio that the property belonged to him, and testified that he recognized the trust, and promised from time to time, as late as a period within less than five years before the filing of the suit, to take action necessary to settle their claims. James C. Ghio died in 1914, and the suit was filed on April 24, 1915. W. Pratte Layton, the husband of one of the beneficiaries under the Barada trust, and later entitled thereto, himself, as above shown, consulted a lawyer about the year 1902, in contemplation of taking some legal action in reference to this matter. Such attorney testifies that he conferred with William B. Thompson, James C. Ghio's attorney at the time (and who by the way was one of the assistant partitioners under the will, and who on this trial testified positively as to the agreement under which the property was conveyed to James C. Ghio, and who prepared the decree in the proceedings in which Francis X. Barada was appointed trustee), and that said Thompson at this time claimed that James C. Ghio was the owner of the Texas lands absolutely. Said attorney further testified that "he did not bring suit to recover this property because the only living witness who knew the facts was hostile at that time." Layton, however, testified that James C. Ghio never did refuse to sign deeds to the property, but, on the contrary, agreed to do so, declaring such to be his purpose until about a year before his death. John G. and Andrew S. Barada testified to the same effect. About the year 1902 the said James C. Ghio took the property out of the hands of the Barada-Ghio Real Estate Company, which had been handling it for him and the trustee, as indicated in our preliminary statement, and thereafter managed the property himself, leasing it through the same agents that had been handling it before, but in his own name, and paying the taxes and receiving the rents, and did not thereafter render any accounting to the beneficiaries of the Barada and Cummiskey trusts of these transactions. About this same time the said James C. Ghio

also placed of record in the counties in Texas in which the land is located the said deed from the trustees under the will conveying the land to him. It seems to be conceded that the possession of most of the land, though there is some dispute as to a few of the tracts, which in view of the disposition we make of the case it is not necessary to settle, was such as to be sufficient under the statute of limitations, the issue being largely as to whether this possession is to be considered as being adverse to the appellees.

Under these facts we think it was properly a question for the jury as to whether there was such repudiation of the trust and notice thereof to the beneficiaries as made James C. Ghio's possession during this time adverse. In order to constitute the possession of a trustee adverse to the beneficiaries of the trust, the repudiation of the trust by the trustee must be clear and unequivocal, and the beneficiaries must have notice thereof. Lewis v. Castleman, 27 Tex. 422; Home Insurance Co. v. Strange, 195 S. W. 851; Perry on Trusts (6th Ed.) § 864; Wood on Limitations, 220b. James C. Ghio owned an undivided one-third interest in the lands in any event. So that by reason of this fact, and under the terms of the verbal trust agreement, he was not bound to allow the lands to be handled by Francis X. Barada. The evidence discloses that the management of the trust property by the said Barada and the Barada-Ghio Real Estate Company, the agency through which the trustee had managed the property, had resulted in "complications" which necessitated the taking charge of the trust property and the affairs of the said real estate company by the St. Louis Union Trust Company, a surety on Barada's bond. The taking of the property out of the hands of the said real estate company was not therefore necessarily an act in repudiation of the trust, under which James C. Ghio held the legal title to a two-thirds interest therein. Neither was the consulting of the lawyer by W. Pratte Layton conclusive evidence of knowledge on his part of a repudiation of the trust by James C. Ghio. Nuckols v. Stanger, 153 S. W. 931; Snouffer v. Heisig, 130 S. W. 916. In the first case cited a suit was even instituted by the beneficiary against the trustee, which was dismissed under promise that an accounting would be had. "Procrastination" was described as one of the characteristics of James C. Ghio, and while Layton may have become impatient of this, and attempted, through the services of a lawyer, to put an end to it, yet, according to Layton's testimony, the issue was not forced to a final culmination. According to appellants' statement, the rentals from the lands had been about sufficient to pay the taxes, so that the failure to render an accounting of the expenses and income on the land would not be as important as it would perhaps if the lands had been bringing a large net income.

Under all the circumstances, we cannot say that the evidence is conclusive that there was an unequivocal repudiation of the trust by the trustee and notice thereof brought home to the appellees.

[11] The title acquired by James C. Ghio as to two-thirds of the land, the beneficial interest in which belonged to appellees, is not such title as will support the three-year period of limitations as to such interest. A very full and clear discussion of the meaning of "title," as used in these provisions of the statute, will be found in an opinion written by Chief Justice Phillips of the Supreme Court, in the case of Burnham v. Hardy Oil Co. (Sup.) 195 S. W. 1142–1145. It is shown in that opinion that "title," as it is used in the statute, embraces not only the legal title, but the beneficial interest acquired in land under the grant from the state relied on to support it, but does not refer to interest outside of the grant from the sovereign. "The statute does not recognize as title any mere apparent right to the land granted. While it has reference only to the title originally evidenced by the grant (from the state), and disregards all other title, at no stage does it deal with any apparent right under that title, or with any right less than the actual 'interest' or 'estate' created by the grant. The claimant's title must connect with the grant; it does not connect with the grant unless he holds the right vested by the grant. He does not hold such right unless he has acquired, to the extent that the grant conferred it, the real and beneficial interest in the land." We therefore overrule appellant's sixth assignment based on the refusal of the court to submit the issue of three years' adverse possession.

[12] We will consider together a number of assignments to the introduction of evidence embracing those objections to the following testimony: (1) Certified copies of the decrees in the two chancery proceedings in the St. Louis court, in which Francis X. Barada was appointed trustee of the Barada and Cummiskey trusts; (2) a memorandum statement in the books of Julius Pitzman, one of the partitioners assisting in the partition of the John B. Ghio estate under the will, which statement contained a list of the property and valuation thereof allotted to each of the three interests entitled thereto under the will; (3) letters of Webb and Hill, the Texas agents handling the property while it was being managed by the Barada-Ghio Real Estate Company, as stated before; (4) deed from Francis X. Barada, trustee, executed in 1899, by which he conveyed to Mary O. Cummiskey (later Harbaugh) the trust property handled by him, including a one-third interest in the Texas lands.

All this testimony was, we think, admissible as tending to corroborate the positive testimony of William B. Thompson, as to the agreement under which the property was conveyed to James C. Ghio. The memorandum of Julius Pitzman was shown to have been made prior to the time of the partition, and was the basis upon which the partition was made. According to this list, the Missouri property was divided into three parts, the total valuation of each interest was the same, and immediately following the list and total valuation of such property there appeared to be assigned to each interest three surveys of the Texas land, valued at $2 per acre. The testimony showed that the division was made in accordance with this list, except the Texas property, which was all conveyed to Ghio, and which would thus show on the face of the valuation an overbalance of values in his favor. In connection with this list, it was also shown that it was at first thought to value the Texas property arbitrarily at so much per acre, and set aside a certain acreage to each of the interests; but when the partition came to be finally made the trustees and partitioners, since they had no accurate knowledge of the relative value of the lands, concluded that this method of partition might not prove satisfactory, and agreed upon the conveyance to James C. Ghio. The memorandum in connection with the testimony of the witnesses thus tends to show that James C. Ghio obtained his full share of the estate aside from the Texas property, and tends to corroborate the evidence of Thompson as to the agreement under which the property was conveyed. The letters of Webb & Hill only showed that the land was being handled by them as agents for the Barada-Ghio Real Estate Company, which recognized the existence of the Barada and Cummiskey trust interest in the land. There is no question that during this time the interests were so recognized by the Barada-Ghio Real Estate Company, so that the admission of said letters at any rate would be harmless error, if they were not admissible. There is some doubt about the admissibility of the deed from Francis X. Barada to Mary O. Cummiskey. The will did not provide for the execution of such a deed; nevertheless it would be perhaps a natural method of closing up the trusteeship; and as it was the outgrowth of the recognition of the treatment of the property as belonging to the trust, a part of which at least was apparently acquiesced in by James C. Ghio, we are inclined to think that the deed was admissible. At any rate, we do not think its admission would constitute reversible error.

The appellant requested the court to qualify the admission of the two decrees referred to above by limiting of the consideration to the purpose for which they were admitted in evidence. If the decrees were admissible in evidence only for limited purposes, the appellants should have requested a proper instruction of limitation, which they did not do. In any event, they were admissible in the consideration of the only issue submitted in connection with which the jury could have possibly considered them, to wit, the issue as to the agreement under which the lands were conveyed to James C. Ghio.

[13] The witness Thompson was permitted to state in his testimony that, in the proceedings culminating in the entry of these decrees, the Texas lands referred to were treated as belonging one-third to James C. Ghio and one-third to each of the trusts. This statement is perhaps in the nature of a conclusion, though it is a conclusion of fact. All of the facts which led to the conclusion itself were detailed by the witness, from which it appears conclusively that such was the fact, so that there was no harmful error in the admission of the statement.

[14] By the eleventh assignment appellants complain of the action of the lower court in admitting the testimony of W. Pratte Layton as to conversations with James C. Ghio, in which the said James C. Ghio admitted facts tending to show that he held the land in trust as claimed by the appellees; it being asserted under this assignment that the appellant the St. Louis Union Trust Company is the legal representative of James C. Ghio, deceased, and that the testimony of the said W. Pratte Layton is inadmissible under the provisions of article 3690, Rev. St. The suit was originally brought by Mary O. Harbaugh against the Union Trust Company, to which James C. Ghio had devised his property in trust for the benefit of his wife and children. W. Pratte Layton and John G. and Andrew S. Barada, claimants under the Barada trust, intervened, assuming the position of plaintiffs, and the wife and children of James C. Ghio, beneficiaries under his will, also intervened, assuming the position of defendants. While under the terms of the will the St. Louis Union Trust Company was also made executor, the will was not probated in Texas, and the only right of said company as recognized by our courts would be that of a devisee. Under the will the St. Louis Union Trust Company held the property in trust for management for the benefit of James C. Ghio's wife and children and his children's children. The interest of the intervening beneficiaries under this will was also that of devisees and not heirs. None of the parties defendant were therefore "legal representatives," as that term is used in the statutes. They were not claimants of James C. Ghio's property under the law, but their right was under the will, and the estate was not being administered under the law. Newton v. Newton, 77 Tex. 508, 14 S. W. 157; Clark v. Clark, 21 Tex. Civ. App. 371, 51 S. W. 337; Caffey's Executors v. Caffey, 12 Tex. Civ. App. 616, 35 S. W. 738; Haldeman v. Openheimer, 103 Tex. 279, 126 S. W. 567.

[15] Complaint is also made of the refusal to give several special instructions, the effect of which is as follows: (1) That the deed from Francis X. Barada to Mary Cummiskey (Harbaugh) did "not constitute title"; (2) that appellants had a "perfect legal record title to the lands in controversy"; (3) that "where suit for the recovery of real estate is barred by the provisions of the 10-year statute of limitation the person having such peaceable and adverse possession shall be held to have full title, precluding all claims"; (4) that a certain schedule of lands, prepared by C. R. Jones & Co., and introduced in evidence, was "not a partition of the lands in controversy." In explanation of the last objection, we will say that the schedule referred to was introduced in evidence in connection with testimony of W. Pratte Layton, who testified that in a conversation with James C. Ghio, in which the said James C. Ghio admitted that the lands had been conveyed to him in trust, the said Ghio claimed that a partition of said lands had already been effected, and in connection with this claim produced this schedule of partition prepared by C. R. Jones & Co. of Austin, who he claimed had been employed to partition the land. This schedule divided the land into three parts, leaving one tract undivided. It was styled, "Partition of estate of J. B. Ghio in Texas, into three moieties," and had affixed to it an affidavit by an officer of C. R. Jones & Co., stating that according to information the division was correctly and equally made. This instrument was evidently before the trustees and the partitioners before they acted on the partition, as it antedated their action and the Pitzman listing of Texas lands in moieties follows it. No issue of title or partition was submitted; in fact, the entire case was tried on the theory that the legal title was in defendants and there had been no partition of plaintiffs' and defendants' interests. As we have before stated, the issues submitted were as to whether the parol trust agreement was made at the time of the conveyance to James C. Ghio, and whether he had "adverse possession" of the land for 5 or 10 years. Full instructions as to the law in connection with these two issues were submitted, of which the appellants are not now complaining. Under these circumstances, there was no error in refusing to give the instructions requested as above stated. While they may have correctly stated the law, they were not appropriate in connection with the issues of fact submitted, and would have tended only to confusion in the consideration of those issues of fact.

We have found no reversible error assigned, and the judgment will be affirmed.

HALL, J., concurs. HUFF, C. J., not sitting.