## HOOPER v. COURTNEY.

### No. 6295.

Court of Civil Appeals of Texas. Amarillo.

April 20, 1953.

Rehearing Denied May 25, 1953.

Crenshaw, Dupree & Milam, Lubbock, Joe L. Cox, Plainview, for appellant.

P. B. Randolph and LaFont & Tudor, Plainview, for appellee.

MARTIN, Justice.

On a prior appeal of this cause of action, the judgment of the trial court was reversed and the cause remanded under certain points of error as revealed by the prior opinion of this court in Hooper v. Courtney, Tex.Civ.App., 256 S.W.2d 462. This report of the cause of action is referred to for a statement of the facts and issues as well as the prior rulings on certain of the points of error.

Appellant's first, second, third, fourth, fifth, fourteenth, fifteenth, sixteenth and seventeenth points of error were overruled in the original opinion under appellant's respective points of error there numbered as follows: three, nine, ten, eleven, twelve, twenty-one, twenty-two, twenty-three and twenty-four. Such points will not be ruled on herein as the original judgment of this court was not appealed from and is binding on the appellant.

As pointed out in the original opinion, the five year statute of limitations, Art. 5509, will apply to adverse possession under a deed given in creation of a trust provided there is due proof of repudiation of the trust agreement by the trustee and notice thereof to the cestui que trust.

Since both parties appear to question the above ruling as made in the original opinion they are referred to the citation of authorities in such opinion and particularly to Neyland v. Bendy, 69 Tex. 711, 7 S. W. 497, Syl. 2. In such opinion the Supreme Court spoke clearly upon the issue in the following language:

"The substance of the charge given was, if the deed was executed upon an agreement that defendant would reconvey the land to the plaintiff upon the happening of certain things, then defendant could not prescribe under the five-years statute, as against the plaintiff, until he had repudiated the trust, and made it known to plaintiff. We think there was no error in the charge as given". [69 Tex. 711, 7 S. W. 500.]

It is apparent from this ruling of the Supreme Court that if the trustee had repudiated the trust and had made such repudiation known to the plaintiff that he could have correctly raised the issue of the five-year statute of limitations. The five-year statute of limitation as of the date of February 7, 1888, the date of the rendition of the opinion in Neyland v. Bendy, supra, was examined at the time of the drafting of the original opinion and such statute was found to be identical to the present five-year statute of limitation.

Under the authority above, as well as others cited in the original opinion, a ruling on appellant's points six, seven, nine and ten on this appeal is dependent solely upon the issue of whether there is any evidence in this record that appellant Hooper repudiated the written trust agreement and made known such repudiation to his mother, Addie Lee Hooper, who became one of the beneficiaries of the original trust agreement upon the death of her husband, J. C. Hooper. As a counterpart of this issue, if there was evidence of repudiation of the trust agreement and that knowledge of such repudiation was brought home to Addie Lee Hooper, then the trial court erred in setting aside the jury findings to Special Issues Numbers 16, 17; 20, and 21 establishing the issue of repudiation and limitation title under the five-year statute of limita-

tion. Also bound up in the same issues—if there was no evidence of repudiation of the trust agreement and subsequent knowledge thereof brought home to Addie Lee Hooper, the trial court correctly accepted the jury's answer to Special Issue Number 18 finding that Mrs. Hooper had no knowledge that Robert E. Hooper repudiated her rights in the land. Such issue would likewise not be a material one under this circumstance.

It must be noted that in the original opinion of the Court of Civil Appeals, as pointed out hereinabove, appellant's points 9 and 10 were overruled under a finding by the court that "the evidence is not of sufficient probative force to support appellant's claim of a verbal relinquishment by either J. C. Hooper or by Addie Lee Hooper * * *." [256 S.W.2d 468.] With the issue of verbal relinquishment disposed of as to both J. C. and Addie Lee Hooper, the issue as to whether or not there was a repudiation of the written trust agreement and knowledge of such repudiation brought home to J. C. Hooper and Addie Lee Hooper during their lifetimes is answered by an examination of the testimony of appellant, Robert E. Hooper. It is noteworthy that the jury found that the trust agreement was not repudiated by Robert E. Hooper as to appellee M. E. Courtney even considering appellant's testimony as to his alleged verbal repudiation made to Courtney as follows: "If you are going to keep the warehouse, I will just keep the land and we will wipe the slate clean from here." (Emphasis added.) This testimony quoted, to be discussed later in relation to other facts, is not entitled to any consideration whatsoever in determining whether appellant repudiated the trust agreement as to either J. C. Hooper, deceased, or as to his surviving wife, Addie Lee Hooper, since such statement was not made to either of the named persons. Further, although ruled on in the original opinion, an examination of the language above quoted reveals that the jury correctly found that appellant did not unequivocally repudiate the trust agreement as to M. E. Courtney.

The above evidence being ruled upon in the original opinion, and such issues concluded thereby, as well as the evidence in regard to the issue of a verbal relinquishment of the land by J. C. and Addie Lee Hooper, appellant's testimony as to his asserted repudiation of his mother's and his father's interest in the trust property may be wholly summarized under the following items of evidence: (1) sale of the refinery equipment and division of the money therefrom; (2) sale of 3.2 acres of the trust property to the Alfalfa Milling Company; (3) renting of the land and collection of the rents and (4) alleged statements made by J. C. Hooper to appellant out of the presence of appellee and (5) alleged statements made by Addie Lee Hooper to appellant out of the presence of the appellee. These elements of asserted repudiation will be discussed hereinafter as numbered. But, it should be noted at this point that upon the above identical elements in evidence on the trial of the cause, further supplemented by appellant's own testimony that he made a direct verbal repudiation as to appellee, M. E. Courtney, the jury found that appellant did not repudiate the trust agreement as to appellee Courtney. As stated at the time of oral submission, no sound basis exists for the proposition that on a given set of facts as to repudiation the jury can correctly find that such facts did not constitute a repudiation of the trust agreement as to one beneficiary of the trust and at the same time find the same, or less, facts did constitute a repudiation of the same trust agreement as to the other beneficiary.

The evidence as to the asserted repudiation will be detailed. First, an examination of the evidence as to element 1 of the asserted repudiation reveals there is no controversy in the record as to the sale of the refinery equipment, a part of the property subject to the trust, being made by agreement and plan of all parties to the trust agreement. Further, appellant divided the proceeds of this sale between the beneficiaries of the trust thereby recognizing that such act of sale was not a repudiation of the trust agreement but was in fact a recognition thereof. The record further reveals that the trust property was merely bought in by the parties in an attempt to

liquidate the same and recoup some of their prior losses. As to element 2 of the alleged repudiation, the sale of 3.2 acres of the land to the Milling Company, it is revealed by the testimony of appellant that he did not appropriate the proceeds of this sale to his own use or claim the same at the time of sale but placed such proceeds in a savings bond which he was still holding on the date of the trial of the cause. As to element 3, the testimony of appellant reveals he collected from the Compress Company two $600 checks received as rental for the land and that at the date of trial he was not yet assured enough of his repudiation of the trust agreement to cash these two checks in amount $600 each and pocket the money. As to element 4, it will be noted in passing that despite the alleged relinquishment of the land to appellant by J. C. Hooper, which relinquishment was found not to exist in the former opinion of this court, appellant expressly acknowledged that if the property sold for more money than appellant had invested in the same he would have paid it over to his father. "Q. You sure would? A. I would." As to element number 5 with reference to repudiation, eliminated in so far as it related to the issue of relinquishment of the land by Addie Lee Hooper, the record reveals that appellant expressly denied that he had ever testified that he repudiated the trust agreement as to his mother, Addie Lee Hooper, "Q. I thought you told her, 'I told her I wanted her to understand she had no interest in this property.' . Didn't you testify to that a while ago; didn't you say that awhile ago? A. I sure don't remember that I said that." As to the actual issue asserted under elements 4 and 5 above, an examination of the testimony of appellant as to his conversations with his father, J. C. Hooper, deceased, and with his mother, Addie Lee Hooper, reveals that all appellant's testimony was pitched entirely on the theory of a verbal relinquishment of the land to him by his father and mother. Appellant's testimony never rose to the stature of even an attempt to show a verbal repudiation by appellant as against either his father, J. C. Hooper, or his mother, Addie Lee Hooper. This point is further emphasized by the fact, as pointed out hereinabove, that appellant denied that he had ever testified as to a direct repudiation of the trust as to his mother. A summary of the record reveals that appellant sought to prove only a relinquishment of interest from his father and mother to him and not that he repudiated their interests in the trust property. In the original opinion the Court of Civil Appeals found there was no evidence to support the issue of relinquishment. In the light of the above facts, illustrative of the testimony of appellant throughout the cause, it is obvious there is no evidence of probative force in the record that appellant repudiated the trust agreement as to either his father or his mother. As pointed out hereinabove, since the jury found under the above evidence, supplemented by appellant's own contention that he orally repudiated the trust as to appellee, that appellant did not repudiate the trust agreement as to appellee, M. E. Courtney, it is not here assumed that there exists between mother and son a peculiar relationship that would convert the same evidence, or less, into a repudiation of the trust agreement as to appellant's mother. In fact, it should be a sound inference that as between a mother and son any acts of repudiation of a trust agreement would of necessity have to be more clear and unequivocal than would acts of repudiation between unrelated parties.

In St. Louis Union Trust Co. v. Harbaugh, Tex.Civ.App., 205 S.W. 496, 500 [10], the court ruled as follows:

"In order to constitute the possession of a trustee adverse to the beneficiaries of the trust, the repudiation of the trust by the trustee must be clear and unequivocal, and the beneficiaries must have notice thereof."

This principle is also expressed in Smith v. Dean, Tex.Civ.App., 240 S.W.2d 789, syl. 5–7, Slay v. Burnett Trust, 143 Tex. 621, 187 S.W.2d 377 and Chard v. O'Connell, 48 Cal.App.2d 475, 120 P.2d 125, syl. 11–13.

A summary of all the appellant's testimony reveals only (1) that he sold a part of the trust property and distributed the

proceeds to the beneficiaries of the trust; (2) that he sold 3.2 acres of the trust property and placed the proceeds in a bond which he held at the time of trial; (3) that he rented the property for two years to the compress company and held the two $600 checks for rent pending the outcome of any litigation. There were some small rent items of which he held a record and the taxes were paid but the elements detailed above reveal appellant's position on the issue of repudiation. Elements 4 and 5 were eliminated under the original opinion and rulings as to the issues of relinquishment and are discussed above only in so far as they related to proof of repudiation of the written trust agreement.

It appears that appellant was not convinced at the time of trial of the cause that he had repudiated the trust agreement and brought home knowledge thereof to the beneficiaries. He was still holding the funds derived from the trust property for division if compelled to deliver the same. Further, appellant's detailing of all the expense he had been out on behalf of the beneficiaries of the trust property, which expense he sought to recover in this suit, does not comport with appellant's theory, unsupported by any evidence, that he had long ago repudiated the written trust agreement, pocketed the proceeds of the trust property and openly claimed the land as his own with notice to all beneficiaries. In this connection, it appears to be a sound assumption that if appellant was actually convinced in his own mind of the validity of his asserted repudiation, he was attempting to recover from appellee his expenses incurred in merely caring for his own property.

■ The record reveals that appellant did not clearly and unequivocally repudiate the written trust agreement and bring home to the beneficiaries of the trust the express knowledge of such repudiation. Appellant's cause of action and state of his mind in regard to his own intent is clearly revealed by the facts and is aptly ruled upon in Thompson v. Moor, Tex. Com.App., 14 S.W.2d 803, 804, as follows:

"But peaceable possession, even when accompanied with acts whose prima facie import is that of hostility, may not, in truth, be adverse, for intent (of the possessor) may bring his acts, etc., into consonance with recognition of the privileges of true ownership. Intent, then, is a controlling factor. Purpose kept intimate (through lack of overt acts, etc.) to the possessor is, of course, nonobligatory upon the true owner, for in such event there is lack of requisite notoriety. * * * But design, which does not include purposed adverse claim, manifestly, is binding upon the possessor, whether published or not. * * *

"Actual knowledge of intent is confined, ex vi necessitate, to the person whose acts come under review. Of all persons, he is the only one in a position to declare the truth as a fact. In his expressions he may or may not state the truth; a possessor, e.g., may declare his entry, etc., was amicable, but it may, nevertheless, have been hostile, or he may declare a hostile intent, whereas, in fact, the intent may have been peaceable. But because of the exclusiveness of his knowledge and the lack of any reason to forget the truth, his declarations of intent (in so far as the declarations are against his interest) given upon the trial of his case *ought to be regarded as conclusive upon him.*" (Emphasis added.)

The court further summarized the rule which should be conclusive of the issue here,

"The testimony, thus qualified and summarized, and with the tremendous weight attributable to its source, (i. e., as coming from the person upon whom lay the burden of proof in respect to each basis of limitation title, and who had exclusive knowledge of the state of mind involved), discloses possession in subordination to true ownership." Thompson v. Moor, supra; Arrington v. McDaniel, Tex.Com. App., 14 S.W.2d 1009.

Under the above facts and law applicable thereto, appellant's points 6, 7, 8, 9 and 10 are overruled. It follows as a natural sequence that since there was no repudia-

tion of the trust agreement by the appellant, the issues in regard to notice thereof become immaterial and appellant's points 11, 12 and 13 are overruled. Further, the trial court correctly accepted the jury answer to Special Issue Number 18 that Mrs. Hooper had no knowledge that appellant repudiated her rights in the lands controversy. Since there was no evidence to support the answers of the jury to Special Issues 16, 17, 20, 21 and supplemental issues C and D, such answers of the jury were correctly set aside and therefore no conflict existed between such issues and Issue No. 18 above as accepted by the court. Nor is this issue material under the rulings hereinabove made, appellant's 18th point of error is overruled.

In conclusion, it is noteworthy that appellant was engaged in litigation with his mother concerning the estate of his deceased father during at least a part of the time he alleged he was receiving statements from her which he asserts constituted a relinquishment to him of the land subject to the written trust agreement. Further, if we accept appellant's testimony in the cause, all that appellee had to do to obtain a settlement of the trust property was to deliver over the sheetiron building found to be of the value of $200.

Appellant's points of error are overruled as hereinabove detailed and the judgment of the trial court is affirmed.